**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0861n.06**
**Filed: October 19, 2005**

**No. 04-4164**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| IVY WOODS HEALTHCARE AND REHABILITATION CENTER, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | ON APPEAL FROM A DECISION OF THE DEPARTMENTAL APPEALS BOARD |
| TOMMY THOMPSON; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, | ) ) ) ) ) | |
| Respondents. | ) | |

Before: KENNEDY, COOK, and GRIFFIN, Circuit Judges.

PER CURIAM. Ivy Woods Healthcare and Rehabilitation Center ("Ivy Woods") seeks review of a decision by the Secretary of Health and Human Services—acting through the Centers for Medicare and Medicaid ("CMS")—imposing civil monetary penalties ("CMPs") on Ivy Woods for noncompliance with Medicare participation requirements. The Administrative Law Judge ("ALJ") and the Department of Health and Human Services's Departmental Appeals Board ("DAB") both affirmed the administratively-imposed penalties.

Ohio Department of Health ("ODH") officials, acting on behalf of CMS, surveyed Ivy Woods and discovered numerous resident-care deficiencies in violation of twelve Medicare

No. 04-4164
*Ivy Woods v. Sec'y of Health & Human Servs.*

participation requirements.[1]   The most serious deficiencies—resulting in actual harm to residents—included three G-level offenses: failure to provide the resident sufficient care "to attain or maintain the highest practicable physical, mental and psychological well-being" in violation of 42 C.F.R. § 483.25; failure to prevent pressure sore development in violation of 42 C.F.R. § 483.25(c); and failure to provide adequate supervision and assistance devices to prevent accidents in violation of 42 C.F.R. § 483.25(h)(2).  ODH also cited Ivy Woods for one F-level, four E-level, four D-level, and two B-level deficiencies.  These violations prompted CMS to assess $6,600 in CMPs against Ivy Woods.

I

Ivy Woods challenges the Secretary's noncompliance findings as unsupported by substantial evidence, insisting the DAB misconstrued or overlooked crucial facts when examining the record.  This panel, however, having reviewed the record as contained in the joint appendix, concludes that substantial evidence—amply explained in the comprehensive DAB opinion—supports the DAB's decision to uphold the CMPs based on Ivy Woods's failure to comply with numerous Medicare participation requirements.  Issuing a further detailed opinion recounting the substantial factual support for each violation would serve no jurisprudential purpose.  The record is replete with specific evidence supporting each care-deficiency finding upheld by the ALJ and DAB.

---

[1]Though the ALJ concluded the CMS failed to establish Ivy Woods violated two of the twelve Medicare participation requirements cited by ODH and declined to rule on one, the nine violations support the $6,600 assessment.

II

While arguing that it substantially complied with Medicare participation requirements, Ivy Woods also defends by claiming the DAB held it to a strict liability rather than the proper substantial-evidence standard. Ivy Woods's view of the evidential standard applied in its case stems from two assertions: (1) that the DAB required it to comply with one regulation when doing so would cause it to violate another and (2) that the DAB required Ivy Woods to do "everything within its power" to prevent accidents as opposed to the usually-applied substantial compliance standard. For support it offers five examples. None persuades us that an improper standard guided the administrative decision.

First, Ivy Woods points to F-Tag 164 where a surveyor observed that Ivy Woods failed to cover a resident receiving personal care while the door was open, allowing another resident visual access. The DAB affirmed the ALJ's conclusion that Ivy Woods violated 42 C.F.R. § 483.10(e), which provides that "[t]he resident has the right to personal privacy and confidentiality of his or her personal and clinical records. Personal privacy includes . . . personal care." That resident's involuntary bodily movements required permanently restraining her to ensure such personal privacy, argues Ivy Woods, and remedying the one issue requires a violation of other regulations about restraints. As we read it, however, the surveyor's observation supporting the violation plainly pointed to the failure to just close the door.

Second, Ivy Woods points to F-Tag 241. The DAB concluded Ivy Woods violated 42 C.F.R. § 483.15(a) declaring, "The facility must promote care for residents in a manner and in an environment that maintains or enhances each resident's dignity and respect in full recognition of his or her individuality." A surveyor observed nurse aides place Resident 40—whose conditions included cerebral palsy, bilateral congenital deformities, anxiety disorder, and a broken leg—on a shower bed backwards with her head at the top of the bed and her feet at the bottom. The surveyor testified that the resident's head is supposed to be placed on the bottom end. When the aides placed Resident 40 on the shower bed, the resident complained they were placing her on the bed incorrectly. During the shower, Resident 40 told the aides her broken leg hurt and cried until the shower was over. The aides ignored Resident 40's complaints and complained they had urine on their uniforms from Resident 40's leaking catheter as if Resident 40 were not in the room. Ivy Woods says to avoid this deficiency, it would need to violate "a separate regulation" without pointing to any regulation it would have violated by complying with this care standard. The DAB affirmed the ALJ's deficiency finding, which cited 42 C.F.R. § 483.15(a) governing staff's conduct toward residents. Here, Ivy Woods's staff treated Resident 40 in an undignified manner when they ignored her complaints and complained to each other about her leaking catheter in her presence.

Third, Ivy Woods points to F-Tag 246. 42 C.F.R. § 483.15(e)(1) provides that "[a] resident has the right to . . . [r]eside and receive services in the facility with reasonable accommodation of individual needs and preferences, except when the health or safety of the individual or other residents would be endangered." Resident 20 required assistance to walk and his care plan provided

for a call light so that he could request assistance. A surveyor noticed Resident 20's call light on the floor, fives times within two days, in violation of the regulation. Ivy Woods argues strict liability was applied by the ALJ and DAB in finding a violation of this regulation. In view of the multiple occasions the call light was unavailable in a two-day period, we agree that the ALJ was warranted in finding that Ivy Woods was not in substantial compliance with the regulation.

Fourth, Ivy Woods points to F-Tag 309. The DAB confirmed the ALJ's finding that Ivy Woods violated 42 C.F.R. § 483.25, which provides that "each resident must receive and the facility must provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychological well-being, in accordance with the comprehensive assessment and plan of care." Ivy Woods violated this regulation because the canvas cover on Resident 40's leg brace was frayed in such a way that the metal bars were rubbing against her leg and causing her sores; there was no care plan determining whether her immobilizer should be used in bed; and the staff was not trained on how to place Resident 40 on a shower bed without hurting her. Finding a violation of this regulation is not an application of strict liability, but a violation under the lesser standard of substantial compliance.

Finally, Ivy Woods points to F-Tag 324. 42 C.F.R. § 483.25(h)(2) provides that "[t]he facility must ensure that . . . [e]ach resident receives adequate supervision and assistance devices to prevent accidents." Here, the DAB affirmed the ALJ's finding that Ivy Woods violated the regulation by failing to use proper assistive devices or give necessary supervision to minimize the

risk of falls for three residents. Ivy Woods argues the ALJ and DAB applied the unduly strict

*Koester* standard—requiring the facility to do everything in its power to prevent accidents—in

reviewing its petition. *See Koester Pavilion v. HCFA*, DAB No. 1750 (2000). Not so. According

to the DAB decision, which does not invoke *Koester*, the regulation "does require the facility to take

reasonable steps to ensure that a resident receives supervision and assistance devices designed to

meet his or her assessed needs and to mitigate foreseeable risks of harm from accidents." The DAB

concluded Ivy Woods "misapprehends the meaning of substantial compliance." It explained,

> A facility is not in substantial compliance with a participation requirement if it has
> a deficiency that creates at least 'the potential for more than minimal harm' to one
> or more residents. 42 C.F.R. §§ 488.301. Thus, a facility that does not meet the
> regulatory standard may be subject to remedial action unless the deficiency causes
> no actual harm and has a potential for only minimal harm.

III

Last, we note Ivy Woods's challenge hinging on application of the DAB's so-called *Hillman*

rule. Yet, given that the rule operates only when the evidence stands in equipoise, our contrary

assessment of of Ivy Woods's evidence here forecloses operation of the rule. We therefore decline

to consider the merits of this issue. See *Batavia Nursing & Convalescent Ctr. v. Sec'y of Health &*

*Human Servs.*, 129 Fed. Appx. 181, 184 (6th Cir. 2005) (declining to address the question

"[b]ecause the evidence is clearly not in equipoise in the present case") (unpublished).

We thus affirm the decision of the DAB.